IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-01967-WYD

MARCOS A. VIGIL,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

      THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits and supplemental security income.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    <u>BACKGROUND</u>

      In January 2011, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income.  He claimed that he was disabled by limitations caused by back pain, schizophrenia, depression and alcoholism, and that his disability began in January 2006.  (ECF No. 13, Administrative Record ["AR"] 127-39, 154, 160.)  Plaintiff was born on August 18, 1977, and was 20 years old, which is defined as a younger individual age 18-49, on the alleged onset date.  (*Id.* 23.)  His father reported to a medical provider that Plaintiff lost touch with reality when he was

about 20; he has paranoia that people do not like him and are going to hurt him; he is isolated and cannot take care of himself.  (*Id.* 231.)

After Plaintiff's application was denied initially (AR 61-88), he requested a hearing before an Administrative Law Judge ["ALJ"] which was held on April 10, 2012. (*Id.* 32-60.)  On April 30, 2012, the ALJ issued a decision finding that Plaintiff was disabled but was not entitled to benefits because alcohol abuse was a prohibited contributing factor material to the finding of disability.  (*Id.* 14-31.)

More specifically, in the sequential evaluation process required by law, the ALJ found at step one that Plaintiff met the insured status requirements of the Act through December 31, 2010.  (AR 19).  He also found that Plaintiff had not engaged in substantial gainful activity since January 1, 2006, the alleged onset date.  (*Id.* 20.)

At step two, the ALJ found that Plaintiff had the following "severe" impairments: "(1) Alcohol abuse; (2) Major depressive disorder; (3) Schizophrenia; and (4) Schizoid personality disorder."  (AR 20.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, app. 1.  (*Id.* )

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"].  He found that based on all the impairments, including the substance use disorder, Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant is unable to sustain concentration, persistence, or pace necessary to complete a normal workday or workweek."  (AR 21.)

At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 23.)  At step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and

impairments (including the substance use disorder), and found that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*)

The ALJ then considered the effect of Plaintiff's alcohol use. He found that if Plaintiff stopped the substance use, his remaining limitations would not cause more than a minimal impact on his ability to perform basic work activities; therefore, Plaintiff would not have a severe impairment or combination of impairment. (AR 24.) He further found that the substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. (*Id.* 27.) In so finding, the ALJ stated that if Plaintiff "stopped the substance abuse, . . . [his] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the finding that the claimant has no severe impairment or combination of impairments for the reasons" explained in the decision. (*Id.* 25.) Accordingly, the ALJ found that Plaintiff "has not been disabled within the meaning of the Act at any time from the alleged onset date through the date of this decision. (*Id.*)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-6), making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ's determination that his alcohol abuse is a contributing factor material to his disability is not supported by substantial evidence. He requests that the ALJ's decision be reversed or that benefits be awarded outright.

II.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'"  *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quotation omitted).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Thus, I will not consider post-hoc arguments of the Commissioner.

B.    The Merits of Plaintiff's Arguments

As noted earlier, Plaintiff argues that the ALJ's finding that his alcohol abuse was a contributing factor material to the disability is not supported by substantial evidence. The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

"Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." *Drapeau*, 255 F.3d at 1214 (citing 20 C.F.R. § 416.935(b)(1)). "[T]he ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether any or all of plaintiff's remaining limitations would be disabling." *Id.* Although this task may be difficult, "'the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other.'" *Taylor v. Colvin*, No. 13-2108, 2014 WL 2584826, at *3 (W.D. Ark. June 10, 2014) (quotation omitted).

If the ALJ finds that the claimant would still be found disabled if he stopped abusing alcohol, "then the alcohol abuse is not a contributing factor material to the finding of disability." *Drapeau*, 255 F.3d at 1214-1215. "If, however, the claimant's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of  disability." *Id.* at 1215.

"[I]f the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the [substance abuse] is not a contributing factor material to the disability determination." *Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006); *see also Taylor*, 2014 WL 2584826, at *3 ("'If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms ... a tie goes to [the claimant]'") (quotation omitted).

A teletype provided by the Social Security Administration as to how to apply the materiality analysis which was in effect at the time of the ALJ's decision directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is *not* a contributing factor material to the disability determination." *Salazar*, 468 F.3d at 623. "Further, the . . . teletype instructs that where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if she stopped using drugs or alcohol, an ALJ should 'find that DAA is not a contributing factor material to the determination of disability.'" *Id.* at 624. According to the SSA, the claimant has the burden of proving disability in connection with the materiality analysis. SSR 13-2P, 2013 WL 621536, at *4 (Feb. 20, 2013).[1]

I find that the ALJ's decision regarding materiality is not supported by substantial evidence. The first inquiry is whether there is a medical or psychological report, opinion

---

[1] It does not appear that the Tenth Circuit has addressed this issue; however, other Courts of Appeal have similarly concluded that the burden rests with the plaintiff. *See Martin v. Comm'r of Social Security*, 547 F. App'x 153, 156 n. 1 (3rd Cir. 2013). I note as to SSR 13-2P that it was issued after the ALJ's decision and is thus not relevant as it applies to that decision.

or projection as to a claimant's remaining limitations if he or she stopped using drugs or alcohol. *Salazar*, 468 F.3d at 624. Here, there was no opinion evidence that specifically addressed whether Plaintiff's limitations would remain if he stopped alcohol. Thus, the ALJ relied on two periods of abstinence in finding that Plaintiff's substance abuse was a contributing factor material to the disability. (AR 25.) *See Salazar*, 468 F.3d at 624 ("some of the most useful evidence in substance abuse cases "is that relating to a period when the individual was not using drugs/alcohol"). The ALJ stated:

> This approximately 4 month period of sobriety in 2007 and, to a lesser extent, the 2 month period of sobriety in 2011, demonstrates that, when the claimant is not abusing alcohol, his mental impairments are adequately treated by his medications. During this period, the claimant and his father reported significant improvement in his symptoms, so much that the claimant felt he was able to work again. This is a de facto admission that his mental impairments, sans alcohol abuse, do not limit his ability to perform basic mental work activities.

(*Id.*)

The ALJ improperly ignored, however, another period of abstinence during the relevant period where the Plaintiff continued to experience severe symptoms—Plaintiff's hospitalization from June 5 to June 11, 2007. The law is clear that an ALJ must "'consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled,' . . .", and must discuss the significantly probative evidence he rejects. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quotation omitted); *see also Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (quotation omitted).

-7-

The evidence from Plaintiff's hospitalization was the one period when Plaintiff

was, unquestionably, abstinent.[2]  This evidence does not support the ALJ's finding that

when Plaintiff is abstinent, his mental impairments are not limiting.  Thus, Dr. Stockdale,

Plaintiff's treating physician at the time, hospitalized Plaintiff after he "became

concerned about his level of drinking and some suicidal talk and ideation."  (AR 196.)[3]

Plaintiff was initially admitted to the hospital for alcoholism, but "because he was

perceived by the hospital as gravely disabled and a threat to self and others, he was

placed in a locked inpatient psychiatric unit that deals with dual diagnoses."  (*Id.* 196.)

The hospital's discharge diagnoses for Plaintiff were alchoholism, chronic, dependent

and severe, major depressive disorder, schizotypal personality disorder, and a GAF of

30.  (*Id.*)[4]

From the foregoing, it is clear upon discharge from the hospital that Plaintiff was

still severely impacted by his mental impairments even after his abstinence during the

---

[2] Indeed, during the first period of abstinence noted by the ALJ, Dr. Spadoni stated as to Plaintiff's report that he was maintaining sobriety that there was "a corded quality to his affect about this."  (AR 204.)

[3] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012).  A GAF score of 21-30 indicates that "'[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriate, suicidal peoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).'"  *Id.* (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (Text Revision 4th ed.2000)).

[4] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012).  A GAF score between 21 and 30 indicates that "'[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairments in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas. . . .'"  *Id.* (quotation omitted).

hospitalization.  If the key to a determination of substance abuse materiality is a period of abstinence, the isolation at St. Francis Hospital in 2006 was it.  Indeed, the hospital found that Plaintiff's psychotic disorder was masked by alcohol dependence.  (*Id.* 266.)  The ALJ erred by not considering this evidence, and a remand is required so that this evidence can be properly assessed.

I also note that when Plaintiff saw Dr. Stockdale in April 2012, it appears he was abstinent.  Plaintiff reported that he had only two to three relapses into alcohol in the past years and that the relapses lasted for one day.  (AR 263.)  Despite his abstinence, Dr. Stockdale found that Plaintiff "does not have the ability to maintain a job in the regular work force due to his psychiatric status" as he "continues to have chronic mental illness and does not have the skills, physical or cognitive energy or stamina, and adequate reason or judgment to work."  (*Id.* 264.)  While the ALJ gave no weight to this opinion for reasons discussed below which I find error with, he ignored the fact that these findings appear to have been made in a period of abstinence.  There is also evidence in the record that the ALJ ignored that Plaintiff had symptoms from schizophrenia, including paranoia and disorganized and illogical thought, that were found to have "persisted after stopping alcohol abuse."  (*Id.* 280.)  This evidence also needs to be considered on remand.

As to the ALJ's reliance on the other two periods of abstinence, I find the ALJ erred with respect to his findings.  It is true that during the first period of abstinence considered by the ALJ, Plaintiff condition improved.  (AR 203-05.)  In medical treatment notes he was found to be doing "quite well", and his father reported that he was doing "the best he ha[d] done in years."  (*Id.* 204.)  Moreover, Plaintiff reported that he hoped

to return to employment in the future. (*Id.*)  During the second period of abstinence, Plaintiff reported that he was not drinking and that his symptoms were "a little better." (AR 247-49.)  He said that he was not concerned about being watched and did not have paranoid thoughts.  (*Id.* 247.)

The ALJ concluded that this evidence showed that Plaintiff's mental impairments improved during periods of abstinence.  (AR 25.)  However, the ALJ selectively applied the evidence on this issue.  Thus, during the first period of abstinence, Dr. Spadoni, Plaintiff's treating physician, attributed Plaintiff's improvement to his current medications, *i.e.* Zyprexa, not because of Plaintiff's alleged sobriety.  (*Id.* 204-05.) During the second period of abstinence, Dr. Kron found "no change" in the diagnosis, and continued to find Plaintiff had poor insight and limited judgment.  (*Id.* 245.)  The ALJ ignored these findings, and violated the rule that an ALJ may not "pick and choose from a medical report, using only those parts favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

Moreover, Drs. Spadoni and Kron did not give Plaintiff a clean bill of health during this period of alleged sobriety or state what he was functionally capable of in terms of work.  Indeed, Dr. Kron opined that it was not clear whether Plaintiff's symptoms represented a psychotic disorder independent of his drinking or was due to the effect of alcohol.  (AR 249.)  Courts have made clear that there is a distinction between a doctor's notes for purposes of treatment and the doctor's opinions on the claimant's ability to work.  *See Brownawell v. Comm'r of Social Security*, 554 F.3d 352, 356 (3rd Cir. 2008).  The ALJ improperly interposed his own lay judgment that because Plaintiff was reported as doing better during these periods, this meant that he could

work full time even with his schizophrenia and other mental impairments.  *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (an ALJ may not make speculative inferences from medical reports); *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ may not substitute his own medical judgment for that of mental health professionals).  "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000).

My finding that the ALJ erred in interposing a lay judgment as to the effects of Plaintiff's alleged sobriety as detailed in treatment notes is supported by several cases. Thus, in *Hutsell v. Massanari*, 259 F.3d 707 (8th Cir. 2001), the Eight Circuit found that "the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity." *Id.* at 712.  "Given that Hutsell's treating physician has not discharged her from treatment and requires her to see him frequently and that other doctors have concluded that Hutsell's work skills are seriously deficient, 'doing well' as a chronic schizophrenic is not inconsistent with a finding of disability." *Id.* at 712-13.

Similarly, the Third Circuit found that it was improper for the ALJ to reject a medical provider's opinion based on a notation that the plaintiff was stable with medication, as the treatment notes report "on the claimant in an environment absent of the stresses that accompany the work setting."  *Morales*, 225 F.3d at 319.  It further stated:

-11-

> The relevant inquiry with regard to a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). For a person, such as Morales, who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic. Dr. Erro's observations that Morales is 'stable and well controlled with medication' during treatment does not support the medical conclusion that Morales can return to work.

*Id.* Similar to *Morales* and *Hutsell*, the statements in this case in treatment notes that Plaintiff was doing well during purported periods of abstinence are not substantial evidence to support the ALJ's conclusion that Plaintiff's remaining mental impairments would not be disabling without the alcohol abuse.

I also find that the ALJ clearly interposed his own lay judgment as to what Plaintiff's mental limitations would be if he stopped alcohol, and selectively applied the evidence on this issue. (AR 27.) For example, the ALJ found in support of his functional assessment that when Plaintiff is sober, he seeks employment. (*Id.*) Yet there is no evidence that Plaintiff actually sought employment when sober. The ALJ also found that when Plaintiff is sober, he is not paranoid and does not appear to have difficulty interacting with others. (*Id.*) Yet the ALJ ignored evidence detailed above during periods of abstinence where Plaintiff was still having severe symptoms, including paranoia, and the evidence that Plaintiff disliked and distrusted people and was completely isolated. There is not substantial evidence (or any evidence that I could find) that Plaintiff could start interacting well with others or being social if he stopped alcohol abuse. Moreover, the ALJ found Plaintiff's paranoia, inability to sustain concentration, and isolation credible only because of the effects of alcohol. (*Id.* 22.) Yet these symptoms certainly could be consistent with schizophrenia or a Schizotypal

Personality Disorder, and there was not substantial evidence to allow the ALJ to infer

that alcohol was the only culprit for these symptoms.

I find the case of *Thornhill v. Colvin*, No. 13-530, 2014 WL 1328153 (W.D. Pa.

April 2, 2014) instructive in this case. There, as here, the functional limitation that

rendered the plaintiff disabled was the inability to maintain regular pace and attendance

on the job. *Id.* at *6. The court found "[t]hat limitation is not necessarily linked to an

impairment that would normally be expected to improve with abstinence from drugs or

alcohol." *Id.* (citing SSR 13-2p, 2013 WL 621536). The same is true here. The court

also found that the ALJ's conclusion that long term sobriety would render the plaintiff

"able to work amounted to speculation that her 'disabling' limitation would cease in the

absence of continued substance abuse." *Id.* It concluded that "[a] layperson's

speculation about the causes of an individual's medical condition cannot be equated

with 'evidence.'" *Id.* Similarly, here, the ALJ's speculation about the scope of Plaintiff's

mental impairments after stopping alcohol abuse does not equate with evidence.

In addition to relying on the two periods of abstinence discussed in the ALJ's

decision, the ALJ found that Plaintiff's testimony provided further support for his

conclusion. (AR 25.) He noted that Plaintiff "dedicated most of his rambling testimony

to his problems as a result of alcohol and his endeavors to obtain more alcohol", and

"barely addressed the effects of his underlying mental illness at all." (*Id.*) The ALJ

stated he took this testimony to mean that Plaintiff's "primary difficulties are due to his

alcohol abuse, and not his underlying mental illness." (*Id.*) He also noted that Plaintiff

reported he was able to work when he was abstinent. (*Id.* 204.) The ALJ found this to

-13-

be "a de facto admission" that Plaintiff's "mental impairments, sans alcohol abuse, do not limit his ability to perform basic mental work activities."  (*Id.* 25.)

In so finding, the ALJ did not take into account the medical evidence from treating physician Dr. Stockdale that Plaintiff "has poor reality testing", and "has unrealistic thoughts and goals about his future, especially based on his mental status." (AR 198.)  The medical evidence also shows that Plaintiff did not believe his diagnosis of schizophrenic was correct.  (*Id.* 203, 209.)  Treating physician Dr. Spadoni stated he had significant concerns about Plaintiff "and his family's perspective on his illness", noting that Plaintiff stopped Risperdal "at the suggestion of his family", leaving "a very severe illness completely unaddressed."  (*Id.* 209.)[5]  Dr. Spadoni also indicated that Plaintiff "has absolutely no demonstrated insight into the nature of his illness or the real role of his medications."  (*Id.* 201.)  The ALJ  acknowledged that Plaintiff's treatment history and mental status exam findings show that Plaintiff "displays almost no insight into his illnesses."  (*Id.* 22.)  Yet, inexplicably, the ALJ found that Plaintiff's testimony was credible to the extent he blamed his problems on alcohol and not his mental impairments, and as to his alleged "admission" that he could work when he was not abusing alcohol.  (*Id.* 25.)  This finding is not supported by substantial evidence.

Based on the foregoing, I find that the ALJ's reasons for finding that alcohol abuse was a prohibited contributing factor material to the finding of disability are not supported by substantial evidence.  Moreover, no doctor specifically opined as to what

---

[5] Risperdal is an antipsychotic drug used to treat schizophrenia.
http://www.drugs.com/risperdal.html.

Plaintiff's mental limitations would remain if he stopped abusing alcohol or that he would be able to work at that time.  Thus, there was no actual evidence that established Plaintiff, who had severe co-occurring mental disorders, would not be disabled in the absence of alcohol abuse.  Accordingly, the ALJ's materiality finding is not supported by substantial evidence, requiring a remand.

Additionally, I find that a remand is necessary for further consideration of the opinion evidence.  In June 2007, shortly after Plaintiff was released from the hospital, treating physician Dr. Stockdale opined that Plaintiff's impairments were very severe and that Plaintiff is "chronically and gravely disabled."  (AR 198.)  A personality test administered by Dr. Stockdale showed significantly elevated scores for both Axis I and Axis II diagnoses; Plaintiff's scores were significantly elevated for anxiety, depression, withdrawal, schizophrenia, and psychotic thinking.  (*Id.* 197.)  The testing suggested that Plaintiff "has a confused identity, is angry, is easily depressed, has no close friends, has troubling dreams, is suspicious and paranoid, is a loner, is dependent, is unemotional, and has participated in self-mutilating behavior."  (*Id.*)  Dr. Stockdale stated his initial impression that Plaintiff's "alcohol problems are secondary and masking an underlying thought disorder."  (*Id.* 196.)  He diagnosed "alcohol dependence, chronic and severe, secondary to a major depressive disorder with features of a psychotic thinking, schizoid and schizotypal personality characteristics.  (*Id.* 198.)

In April 2012, Dr. Stockdale authored a letter stating that he saw Plaintiff again on April 4, 2012, that Plaintiff's status as gravely disabled "remains the same," and that he "did not feel [Plaintiff] is able to maintain a job in the regular work force."  (AR 263.) Dr. Stockdale found that while there were some positive changes since the first time he

saw Plaintiff, he "continues to have chronic mental illness and does not have the skills, physical or cognitive energy or stamina, and adequate reason or judgment to work." (*Id.* 264.)

The ALJ noted both opinions and gave "great weight" to Dr. Stockdale's opinion "to the extent it encompasses the claimant's functional ability when alcohol abuse is factored in." (AR 23.)  He found that to the extent the opinion accounts for Plaintiff's alcohol abuse, it "is very consistent with the claimant's activities of daily living, mental status exam findings, and treatment history." (*Id.*)  However, the ALJ gave Dr. Stockdale's opinions "no weight" to the extent they could "be interpreted to apply to Plaintiff's mental condition without consideration of his alcohol abuse." (*Id.* 26.)  The ALJ's reasons for giving no weight to the opinions in that context were that they are "not consistent with the claimant's treatment history or mental status exam findings", and Dr. Stockdale "has not seen this claimant for many years, and therefore has a very limited and dated perspective upon which to base his opinions." (*Id.*)  I find error with this analysis.

First, as previously discussed, the ALJ ignored the fact that Dr. Stockdale's April 2012 opinion appears to have been made during a period of sobriety.  Second, the ALJ's finding that Dr. Stockdale had not seen Plaintiff for many years and that his opinions were dated is not true.  Dr. Stockdale saw Plaintiff in April 2012, shortly before issuing his opinion that month.

Third, the ALJ failed to properly weigh Dr. Stockton's opinions as a treating physician.  There is a two step analysis required as to such opinions. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  "The initial determination the ALJ must make

with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* Even if the opinion is not given controlling weight, it is still entitled to deference. At the second step in the analysis, the ALJ must state the weight the opinion is given "and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.*

In the case at hand, while the ALJ stated that Dr. Stockdale's opinions either were or were not supported by Plaintiff's treatment history or mental status exam findings depending on whether they encompassed Plaintiff's alcohol abuse, I find these were conclusory findings made "without reference to 'those portions of the record with which [the doctor's] opinion was allegedly inconsistent'" or consistent. *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). The court cannot determine whether substantial evidence supports an ALJ's decision not to give a treating physician's opinion controlling weight when the ALJ finds that the doctor's opinions "are inconsistent with the other record evidence, but fail[s] to identify those inconsistencies with any clarity." *Crawford v. Colvin*, No. 12-5125, 2014 WL 1193336, at *2 (10th Cir. March 25, 2014).

Moreover, there was evidence that supported Dr. Stockdale's opinion. The ALJ acknowledged that treating physician Dr. Spadoni diagnosed schizophrenia along with alcohol abuse after noting flat affect, slow cognitive functioning, sparse speech and poor

-17-

insight.  (AR 21.)[6]  Dr. Spadoni also diagnosed Schizotipal Personality Disorder, Chronic

mental illness, and a GAF of 30.  (*Id.* 214.)  The mental health providers at Aspen

Pointe also diagnosed schizophrenia and alcoholism along with Personality Disorder

NOS.  (*Id.* 280.)  Dr. Spadoni opined in March 2008 that the long term outlook for

Plaintiff was dismal.  (*Id.* 201.)  He further opined that, off medication, Plaintiff's

prognosis was terrible, even if he maintained sobriety.  (*Id.* 209.)[7]  Dr. Spadoni also

stated that he "would be very surprised if [Plaintiff] is able to establish any meaningful or

gainful employment."  (*Id.* 212.)  The ALJ failed to weigh the opinions of Dr. Spadoni or

to apply the treating physician rule as to him.  He further failed to address the extent to

which this evidence supported Dr. Stockdale's opinion.

Even if Dr. Stockdale's opinion was not entitled to controlling weight, there is no

indication that the ALJ gave it deference as required.  Instead, the ALJ selectively

parsed Dr. Stockdale's opinions to support a finding that Plaintiff was not disabled.

While Dr. Stockdale opined that Plaintiff's alcohol abuse was secondary to his mental

illness, he did not opine directly as to whether Plaintiff would be functionally limited

mentally if he stopped abusing alcohol.  He also did not opine directly as to whether

Plaintiff could work if he stopped abusing alcohol, although his opinion to that effect in

April 2012 was rendered during a period of Plaintiff's abstinence.  It was thus improper

---

[6] The ALJ noted that Dr. Spadoni treated Plaintiff from 2006 - 2008.  (AR 21.)

[7] While the Commissioner asserts this opinion is irrelevant, I disagree.  This opinion was relevant since there was evidence that Plaintiff did not believe he had a mental illness and failed to take medication as a result.  (*Id.* 209, 282, *see also* 25—ALJ pointed out Plaintiff's testimony that he "felt that drinking was more effective than taking his medications" and that Plaintiff lied to his mental health providers at Aspen Pointe, telling them he took his medications when he really did not.)  Plaintiff's failure to take medication would clearly impact the severity of his mental impairments.

for the ALJ to give great weight to the opinion only to the extent it encompassed Plaintiff's alcohol abuse.  If the ALJ wanted to know what Dr. Stockdale's opinions would be if Plaintiff stopped alcohol abuse, he should have contacted him for clarification.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (if the ALJ has questions about the treating physician's opinion or the medical evidence from him is inadequate to determine whether a disability exists, the ALJ is required to contact the treating physician).

In conclusion, I find that the ALJ's conclusion that drug and alcohol abuse is a material factor contributing to Plaintiff's disability is not supported by substantial evidence.  I also find that the ALJ did not properly consider the opinion evidence, including that of the treating providers.  Accordingly, the ALJ's decision must be reversed.  As stated in *Salazar*, "there is no substantial evidence to support [the ALJ's] conclusion that 'without the effects of drug and alcohol abuse, [the claimant] would not be disabled' on the basis of [his mental impairments] alone."  468 F.3d at 624.  While Plaintiff requests reversal and an immediate award of benefits, I find that this case must be remanded for further fact finding.  *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (outright reversal and remand for immediate award of benefits is appropriate only when additional fact finding would serve no useful purpose.).

On remand, the ALJ should keep in mind the Tenth Circuit's holding that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that drug and alcohol abuse is not a contributing factor material to the disability determination. *Salazar*, 486 F.3d at 623.  He also should keep in mind that any finding that Plaintiff

would be able to work if he stopped alcohol abuse would require that he be able to do sustained work-related physical and mental activities in a work setting full-time and "on a regular and continuing basis".  SSR 96-8p(1), 1996 WL 374184, at *1 (July 2, 1996). The claimant must also be able "'to respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting'", *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (quotation omitted), and to "*hold* whatever job he finds for a significant period of time."  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (emphasis in original) (quotation omitted).  Indeed, the Social Security Administration has noted that "the mentally impaired may have difficulty meeting the requirements of even so called 'low stress' jobs."  SSR 85-15, 1985 WL 56857, at *6 (1985).

III.     CONCLUSION

Based upon the foregoing, I find that the ALJ erred in his assessment of materiality and in connection with weighing the medical evidence regarding same.  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  September 29, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge